## HARRIS' ADM'R

*v.*

## CHESAPEAKE & O. RY. CO.

(*Supreme Court of Appeals of Virginia, Oct. 3, 1895.*)

[23 S. E. Rep. 219.]

**Injury to Brakeman—Negligence of Master—Case at Bar.**

A rear brakeman was killed by the defective loading of a lumber car in the front of the train, while attempting to cross over it. He had no duties calling him to that part of the train, the cars in front of the lumber car being supplied with air brakes: *held*, that no negligence was shown in the position the car occupied in the train, though such cars were generally placed in the rear.

**Same—Same—Same.**

Where the evidence showed that a brakeman's duty did not call him to scale a car loaded with lumber, that the brake on this car was set at the only end required before the train left a station, and that it was to remain set until the next station was reached, a judgment in favor of the railroad company, in an action for the brakeman's death, caused while attempting unnecessarily to board such car, on account of the negligent manner of loading it, will not be disturbed.

Error to circuit court, Nelson county ; J. D. Horsley, Judge.

Action by John A. Harris' administrator against the Chesapeake & Ohio Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

*Caskie & Coleman* and *H. St. G. Tucker,* for plaintiff in error.

*Wm. J. Robertson* and *C. M. Blackford*, for defendant in error.

RIELY, J., delivered the opinion of the court.

John A. Harris, the plaintiff's intestate, was killed between 9 and 10 o'clock on the morning of November 5, 1892, by falling from a freight train of the defendant company. At the time of the accident he was performing the duties of a brakeman. The train beside the engine, was composed of 19 cars, of which some were box cars, others lumber cars, and another a coal car. There were two brakeman on duty on the train. Harris was the front brakeman. The train was going east, and, as it moved off from Afton depot, he got upon the third or fourth car from the rear of the train, and went forward until he reached the coal car, which was the fifth from the engine. From the coal car he attempted to get upon the lumber car, which was immediately in front of it, and in doing so fell between them, and was run over and killed. This was just after the train had left the station, and before it had attained a greater rate of speed than from four to five miles an hour. The lumber car was a gondola, with a body about three feet high. The lumber was piled four or five feet higher than the top of the body. The bed of the coal car was about four feet high. In loading the lumber, several planks were so placed as to project over the end of the gondola from one to one and a half feet, and about six or eight inches apart, forming steps, by which the brakeman could get up and down on this car. About a foot from the end of the car, on each side, standards were fixed, and upon their tops, across from one to the other, a bar was fastened, to prevent the lumber from spreading. One of these projecting planks was nearly on a level with the coal car. Harris stepped from the coal car onto this plank, and as he did so, he was observed to throw up his hands, as if to catch hold of some-

thing, missed it, and fell. The end of the plank was after-wards ascertained to be freshly broken.

It was earnestly contended in argument in behalf of the plaintiff that his death was directly due to the negligence of the defendant company.

The first ground on which this contention was based was that the lumber car was improperly and negligently located in the train. It is claimed that a lumber car is more dangerous to mount and pass over than other or ordinary cars, and for that reason should be placed in the middle of the train, where it would not have to be passed over at all by the brakemen, or, if at all, very seldom ; that, if placed in the middle of the train, the front brakeman could work back to it, and the rear brakeman work up to it, and thus the danger incurred in having to go up and down, and pass over it, would be avoided. Conceding that the lumber car should have been located in the train where it would cause the least risk to the brake-man, the contrary is not shown. The three cars next to the engine were provided with air brakes, and with these cars Harris, as brakeman, had nothing to do, as the hand brake and air brake cannot be used together on the same car. The lumber car, upon which he attempted to get, was, by its location in the train, the front one of the cars with which he was concerned, and from which he would work back to the middle of the train, in the performance of his duties. It was equipped with a double brake, rendering it necessary to lock and unlock only the brake at the end of the lumber car which was next to the coal car. It thus appears that the lumber car was as carefully and properly located in the train, in reference to the safety of the brakeman in the discharge of his duties, as if it had been placed in the middle of the train, or at any other point.

It was next contended that the defendant company was guilty of negligence in not providing proper and safe means for the brakeman to get up and down and pass over the lumber car. It is true that it is the duty of the master to provide the servant

with reasonably safe and suitable instrumentalities and appliances for the discharge of the duties he has engaged to perform. If it was necessary to decide, in this case, whether planks of white pine, of an inch in thickness, projecting over the end of a car loaded with lumber, so as to form a kind of steps, was a compliance with this duty, it would be a matter of grave doubt ; but, in the view we take of this case, it is unnecessary to pass upon that question.

Conceding, for the sake of argument, that such means were insufficient, my trouble in the case has been that the evidence does not disclose that Harris had any duty to perform that required him to use these improvised steps. There were no brakes on the three cars in front of the lumber car for him to manage, or which required any attention from him, for they were equipped with air brakes. Afton station, near where the accident happened, is at the beginning of a heavy grade down the mountain. The brake to the lumber car had been set before the train left the station, and was at the end of the car which was next to the coal car. It was to remain set until the train reached the bottom of the grade. It was unnecessary, so far as the evidence discloses, for him to get upon the lumber car for any reason. It was unnecessary to do so for the purpose of unloosing the brake, when it should become proper to turn it loose. Indeed, it could not have been done from the top of the lumber car, as the lumber was piled up several feet above the top of the brake. It could only have been unloosed by going upon the platform of the lumber car, which was readily accessible from the platform of the coal car, and approaching it in that direction ; and, besides, it was shown that this was the regular and proper way of getting at the brake to work it. There was, therefore, no necessity or occasion for him to climb upon or pass over the lumber car. He lost his life through his own fault, in going unnecessarily where no duty called him.

We find no error in the judgment of the circuit court, and the same must be affirmed.